UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 0:24-cv-62340

ANDREE CAMPBELL,

    Plaintiff,

vs.
GROVE BAY HOSPITALITY GROUP, LLC,
a Florida Limited Liability Company
    Defendant.
_____/

## **COMPLAINT**

Plaintiff ANDREE CAMPBELL, by and through undersigned counsel, sues Defendant GROVE BAY HOSPITALITY GROUP, LLC, a Florida Limited Liability Company, and alleges as follows:

1. This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

2. This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3. Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4. Plaintiff ANDREE CAMPBELL is a resident of Broward County, Florida, is sui juris, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5. Plaintiff is, and at all relevant times, has been blind and visually disabled in that

Plaintiff suffers from retinopathy, which is a permanent eye and medical condition that substantially and significantly impairs her vision and limits her ability to see. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing her world, and adequately traversing obstacles. As such, she is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and 42 U.S.C. §3602(h). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.

7. Because she is blind, Plaintiff cannot use her computer without the assistance of appropriate and available auxiliary aids, screen reader software, and/or other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually

2

impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y.2017).

8. Defendant is a Florida Limited Liability Company authorized to do business and doing business in the State of Florida. Defendant owns, operates, and/or controls 2 U.S. based restaurants that offers innovative modern American cuisine, including the restaurant Plaintiff intended to patronize in the near future (and as early as December 2024 and/or early January 2025), which is located at 101 Washington Avenue, Miami Beach, FL 33139.

9. Plaintiff's blindness limits Plaintiff in the performance of major life activities, including sight, and Plaintiff requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with her use of a computer.

10. Plaintiff frequently accesses the internet. Because Plaintiff is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

11. At all times material hereto, Defendant was and still is an organization that owns, operates, and/or controls 2 U.S. based restaurants under the name "Stubborn Seed". Each "Stubborn Seed" location is open to the public. As the owner, operator, and/or controller of these locations, Defendant is defined as a place of "public accommodation" within the meaning of the ADA per 42 U.S.C §12181 and 28 C.F.R. §36.104.)

12. Because Defendant is a location open to the public, each of Defendant's physical locations is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7), and its implementing regulations, 28 C.F.R. Part 36.

13. Defendant also owns, controls, maintains, and/or operates an adjunct website, https://www.stubbornseed.com/ (the "Website"). One of the functions of the website is to provide

3

information on the locations of the Michelin-starred Stubborn Seed restaurants and their hours of operation. Additionally, it allows customers to browse the restaurant's seasonal menu offerings, including the 8-course tasting menu, bar, dessert, and drink menus, make reservations for regular dining and bar seating, arrange private events, view a rich gallery of dishes, interior photos, and watch short videos showcasing the cooking process, read articles about the restaurant's awards and latest news, purchase electronic and physical gift cards, review the restaurant's sustainability programs in the "Compost for Life" and "Ford's Farm" sections, learn about restaurant's history and Chef Jeremy Ford's background on the "About" page, discover the restaurant team and job positions, become VIPs by completing a form to receive exclusive updates on events, secret menus, special offers, discounts, loyalty rewards, and read the blog about the insights into the restaurant's ongoing activities and culinary philosophy.

14. The Website also services Defendant's physical locations by providing information on available menu items, promotions and events, food philosophy, and other information that Defendant is interested in communicating to its customers.

15. Because the Website allows the public the ability to secure information about the locations of Defendant's physical locations and their hours of operation, browse the restaurant's seasonal menu offerings, including the 8-course tasting menu, bar, dessert, and drink menus, make reservations for regular dining and bar seating, arrange private events, view a rich gallery of dishes, interior photos, and watch short videos showcasing the cooking process, read articles about the restaurant's awards and news, purchase electronic and physical gift cards, review the restaurant's sustainability programs in the "Compost for Life" and "Ford's Farm" sections, learn about restaurant's history and Chef Jeremy Ford's background in the "About" section, discover the restaurant team and job positions, become VIPs by completing a form to receive exclusive updates on events, secret menus, special offers, discounts, loyalty rewards, and read the "Blog" section

about the insights into the restaurant's ongoing activities and culinary philosophy, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendant's physical locations, which are places of public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar locations and businesses. Furthermore, the Website is a necessary service and privilege of Defendant's physical locations in that, it acts as a critical point for making reservations and engaging with the Defendant's offerings that are also available for booking in, from, and through its physical locations.

16.     Because the public can browse the restaurant's seasonal menu offerings, including the 8-course tasting menu, bar menu, dessert menu, and drink menu, which change seasonally, make reservations for regular dining and bar seating, arrange private events, view a gallery of dishes, interior photos, and short videos showcasing the cooking process, read articles about the restaurant's achievements and news, purchase electronic and physical gift cards, view sustainability programs in the "Compost for Life" and "Ford's Farm" sections, discover insights into the restaurant's history and Chef Jeremy Ford's background in the "About" section, meet the restaurant team, read more about job positions in the "Join Our Team" section, become VIPs by completing a form to receive exclusive updates on events, secret menus, special offers, discounts, and loyalty rewards, access the "Blog" section, which provides further insights into the restaurant's ongoing activities and culinary philosophy, the Website is an extension of, and gateway to the physical locations, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). As such, the Website is a necessary service, privilege, and advantage of Defendant's brick-and-mortar locations that must comply with all requirements of the ADA, must not

discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical locations.

17. At all times material hereto, Defendant was and still is an organization owning, operating, and/or controlling the Website. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical locations. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

18. Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied (and as early as December 2024 and/or early January 2025), Defendant's physical location located at 101 Washington Avenue, Miami Beach, FL 33139, check their hours of operation, browse the restaurant's seasonal menu offerings, make a reservation for dining and bar, arrange private events, read articles about the restaurant's awards and news, purchase gift cards, review the restaurant's sustainability programs in the "Compost for Life" and "Ford's Farm" sections, learn about restaurant's history and Chef Jeremy Ford's background, discover the restaurant team, and read the blog about the insights into the restaurant's ongoing activities and culinary philosophy. In the alternative, Plaintiff intends to monitor the Website in the near future (and as early as December 2024 and/or early January 2025) as a tester to ascertain whether it has been updated to interact properly with screen reader software.

19. The opportunity to find information about the locations and their hours of operation,

6

browse the restaurant's seasonal menu offerings, including the 8-course tasting menu, bar, dessert, and drink menus, make reservations for regular dining and bar seating, arrange private events, view a rich gallery of dishes, interior photos, and watch short videos showcasing the cooking process, read articles about the restaurant's awards and latest news, purchase electronic and physical gift cards, review the restaurant's sustainability programs in the "Compost for Life" and "Ford's Farm" sections, learn about restaurant's history and Chef Jeremy Ford's background in the "About" section, discover the restaurant team and job positions, become VIPs by completing a form to receive exclusive updates on events, secret menus, special offers, discounts, loyalty rewards, and read the blog section about the insights into the restaurant's ongoing activities and culinary philosophy from Plaintiff's home are important and necessary accommodations for Plaintiff because traveling outside of Plaintiff's home as a blind individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

20.     Like many consumers, Plaintiff accesses a number of websites at a time to help plan her location visits and to compare menus, prices, services, discounts, and promotions. Plaintiff may look at several dozen websites to compare features, discounts, services, promotions, and prices.

21.     Beginning in December 2024, Plaintiff attempted on a number of occasions to utilize the Website to browse through the services and online offers to educate herself as to the menu items, services being provided, learn about the physical locations, check operating hours, view their sustainability programs, and become a VIP to receive exclusive updates on events, secret menus, special offers, discounts, and loyalty rewards with the intent to make an online order from the Defendant. Plaintiff also attempted to access and utilize the Website in her capacity as a tester

7

to determine whether it was accessible to blind and visually disabled persons such as herself who use screen reader software to access and navigate company websites.

22. Plaintiff had long been interested in dining at a Michelin-starred restaurant, so on or about November 20, 2024, she decided to find if there is one nearby. During her search, she came across the website for Stubborn Seed, a Michelin-starred restaurant, known for offering a refined dining experience with a focus on seasonal ingredients, artisanal techniques, and creatively presented dishes. She wanted to explore their menu offerings and to make a reservation for a special dinner. However, she encountered several accessibility issues on the website which made her navigation inefficient. She struggled with the Navigation menu, as the submenu elements were not functioning correctly. In addition, it was impossible for her to select a date for the reservation due to the malfunctioning reservation system which ultimately, prevented her from completing the booking process and making a reservation at the Defendant's location.

23. Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

    a. More than one heading level 1 was used per page. Heading level 1 provides important indication of what the page is about and outlines its content. Using more than one <h1> is allowed by the HTML specification, but is not considered beneficial for screen reader users. Plaintiff used keyboard shortcuts to navigate the home page but could not identify the main meaningful section due to repetitive <h1> heading levels;

    b. Landmark structure was incorrectly defined. Due to repetitive landmark labels, it was difficult for Plaintiff to understand the page section they led to;

    c. Plaintiff was unable to activate sub-menu elements using "enter" or "spacebar" keys. The only mechanism for activating the sub-menu links was the mouse;

    d. Interactive elements for example "Skip to page content" button, on the Home page had poor and non-descriptive name. Plaintiff could not identify the purpose of the interactive

element;

e. In an attempt to select the desired reservation date, Plaintiff encountered interactive elements (buttons) that did not announce their state. Plaintiff was not informed about the necessary action to take, and even after interacting with an element, she was unaware if the action was successful and whether the desired date had been selected;

f. The website did not preserve correct keyboard tabbing (reading) order. After Plaintiff selected a reservation date, the focus was lost, and she was unaware whether the date had been successfully selected, preventing her from completing the reservation. Plaintiff perceived different version of the web page, and its layout had incorrect sequence and order of interactive elements;

g. When the Plaintiff clicked "Find a table" the dialog box that opened did not receive focus. As a result, she was unable to interact with the items within the dialog using her keyboard, leading to confusion during navigation. The information presented in the dialog appeared in an inconsistent order, making it difficult for her to understand the content and effectively manage her selections;

h. Logo was used as link without appropriate alternative text. Plaintiff was not informed about the purpose of the graphic logos, from the bottom of the Home page;

i. Images on the website had inappropriate and unclear alternative text. Plaintiff could not receive accurate information from the non-text element of content;

j. Plaintiff was disoriented when the automatic Email Subscription pop-up window appeared on the web page. Plaintiff, as a legally blind user, had significant difficulty knowing when automatic visual context change had occurred, such as a new window popping up;

k. The Menu page was reloaded after Plaintiff tried to add menu item to wish list and the keyboard focus moved to the top of the page. As a result, Plaintiff was confused by the change of context;

l. The video on the Videos page did not have an audio or text description, as a result, Plaintiff felt disoriented when she could not understand what was happening in the video and what information was lost;

m.   The Plaintiff was unable to determine if the "First and Last name, Email and phone Number" form fields in the Private Event Inquiry Form section was mandatory ("Required"). The lack of clear instructions regarding this field prevented her from successfully submitting her personal information;

n. Hours in the Private Event Inquiry Form section had ambiguous name. Because of the mismatch of the visible button text and programmatically determined label, it was difficult for Plaintiff to identify the purpose of interactive element;

9

  o. Errors are not associated with corresponding forms in the Private Event Inquiry Form section and fail to clearly indicate which field had the problem so the user can easily navigate to it. Fields must be marked as containing an error and must be announced by the assistive technology.

  p. In an attempt to submit the form for private event reservation, Plaintiff encountered a warning message that was not announced by the screen reader software. Plaintiff was not informed about any incorrect actions on the stage of choosing product`s parameters.

  24. Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct Plaintiff to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties accessing, navigating, and communicating with, the Website. Although the Website appeared to have an "accessibility" statement linked from its home page, that "accessibility" statement, when tested, still could not be effectively accessed by, continued to be a barrier to, and did not provide a viable alternative means to fully and equally access and navigate the Website for blind and visually disabled persons, including Plaintiff. Plaintiff, thus, was unable to receive any meaningful or prompt assistance through the "accessibility" statement to enable Plaintiff to equally, quickly, fully, and effectively navigate the Website.

  25. Accordingly, Defendant's Website was incompatible with Plaintiff's screen reading software and keyboard.

  26. The fact that Plaintiff could not communicate with or within the Website left Plaintiff feeling excluded, frustrated, and humiliated, and gave Plaintiff a sense of isolation and segregation, as Plaintiff is unable to participate in the same online experience, with the same access to the menus, and services, as provided at the Website and in the physical locations as the non-visually disabled public.

  27. Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendant's physical restaurant located at 101 Washington

Avenue, Miami Beach, FL 33139, and to use the Website, but Plaintiff is presently unable to do so as Plaintiff is unable to effectively communicate with Defendant due to Plaintiff's blindness and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to Plaintiff's blindness and the Website's access barriers. Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

28.     Because of the nexus between Defendant's physical locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's physical locations for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical locations, which are places of public accommodation subject to the requirements of the ADA.

29.     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

30.     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

31.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

32.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with

disabilities.

33. On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities

34. On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

35. On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

36. Defendant has not created and instituted a useful and effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

37. Defendant has not created and instituted on the Website a useful and effective page for individuals with disabilities, nor displayed a proper link and information hotline, nor created a proper information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled and/or blind communities.

38. The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.2 Level AA or higher versions of web accessibility.

39. Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of accessing Defendant's services offered on the Website and in the physical locations from their homes.

40. Defendant thus has not provided full and equal access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and the physical s locations in contravention of the ADA.

41. Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including

individuals with visual disabilities such as Plaintiff.

42. The broad mandate of the ADA is to provide equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet e-commerce websites such as the Website at issue in the instant action.

43. Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

44. Defendant is, and at all relevant times has been, aware of the need to provide full and equal access to all visitors to the Website.

45. The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

46. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Website's access and operation.

47. Notice to Defendant is not required because of Defendant's failure to cure the violations.

48. Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

49. Plaintiff has retained the undersigned attorneys to represent her in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

50. Plaintiff re-alleges paragraphs 1 through 49 as if set forth fully herein.

51. Pursuant to 42 U.S.C. §12181(7), Defendant is a public accommodation under the

ADA and thus is subject to the ADA.

52. Pursuant to 42 U.S.C. §12181(7), the Website is covered under the ADA because it provides the general public with the ability to find information about the locations and hours of operation, browse the restaurant's seasonal menu offerings, including the 8-course tasting menu, bar, dessert, and drink menus, make reservations for regular dining and bar seating, arrange private events, view a rich gallery of dishes, interior photos, and watch short videos showcasing the cooking process, read articles about the restaurant's awards and news, purchase electronic and physical gift cards, review the restaurant's sustainability programs in the "Compost for Life" and "Ford's Farm" sections, learn about restaurant's history and Chef Jeremy Ford's background in the "About" section, discover the restaurant team and job positions, become VIPs by completing a form to receive exclusive updates on events, secret menus, special offers, discounts, loyalty rewards, and read the blog about the insights into the restaurant's ongoing activities and culinary philosophy. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical locations. Further, the Website serves to augment Defendant's physical locations by providing the public information about the locations and by educating the public as to Defendant's available services through the Website and in, from, and through the physical locations.

53. Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

54. Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods,

14

services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

55. In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

56. Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

57. Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of, the goods, information, and services that Defendant has made available to the public on the Website and in the physical locations in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

58. More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

59. There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to ensuring a correct focus order, attributing descriptive titles to the links, preventing content changes without advance warning, and properly labeling form fields. Incorporating such basic components to make the Website accessible would neither fundamentally

15

alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

60. Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations within the Website are ongoing.

61. The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

62. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

63. According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

64. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

65. As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and

thus violates the ADA.

66. As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to its brick-and-mortar locations, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendant's Website and its physical locations.

67. Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

68. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a) Require Defendant to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical locations through the Website.

b) Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's physical locations and becoming informed of and purchasing Defendant's services, and during that time period prior to the Website being designed to permit

individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and in the physical locations.

69. Plaintiff is entitled to recover her reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A. A declaration that Defendant's Website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a Website accessibility coordinator, a Website application accessibility policy, and providing for Website accessibility feedback to ensure compliance thereto;

D. An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

E. An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective

communication for individuals who are visually disabled;

F. An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

G. An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

H. An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

I. An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

J. An award to Plaintiff of her reasonable attorney's fees, costs and expenses; and

K. Such other and further relief as the Court deems just and equitable.

DATED: December 12, 2024.

**ALEKSANDRA KRAVETS, ESQ. P.A.**
Lead Counsel for Plaintiff
1100 Buchanan Street
Hollywood, FL 33019
Phone: 347-268-9533
Email: ak@akesqpa.com

By: ____*/s/ Aleksandra Kravets, Esq.*
    Aleksandra Kravets, Esq.
    FBN: 120562